Ahren A. Tiller – SBN 250608
Donald W. Reid – SBN 281743
BANKRUPTCY LAW CENTER, APC
1230 Columbia St., Ste. 1100
San Diego, CA 92101
Telephone: (619) 894-8831
Facsimile: (866) 444-7026
ahren.tiller@blc-sd.com
don@blc-sd.com

Proposed Counsel for
BARRIO RESTAURANT GROUP, LLC,
Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>BARRIO RESTAURANT GROUP, LLC,<br><br>Debtor in Possession, | Case No. 24-01184-CL11<br><br>Chapter 11, Subchapter V<br><br>**FIRST DAY MOTION FOR ORDER APPROVING INTERIM USE OF CASH COLLATERAL**<br><br>Case Filed: April 2, 2024<br>Dept:   1<br>Judge:   Hon. Christopher B. Latham |

1

## I. INTRODUCTION

By this Motion, Barrio Restaurant Group, LLC ("BRG") seeks authority to use cash collateral through June 30, 2024 on an interim basis pursuant to the budget set forth in **Exhibit 1** ("Budget") to the separately filed Declaration of Margarita Georgieva ("Georgieva Declaration").

This Motion is supported by the separately filed Declaration of Margarita Georgieva ("Georgieva Declaration"), as well as the arguments of counsel, and other admissible evidence properly before this Court at or before the hearing on the Motion. In addition, BD requests that the Court take judicial notice of all documents filed with the Court in this case.

Attached hereto as **Exhibit A** is a copy of the proposed order requested.

This relief is requested pursuant to sections 361 and 363 of Title 11 of the United States Code[1]; Federal Rules of Bankruptcy Procedure 2002, 4001(b), and 9014; and Local Bankruptcy Rule 9013-4 and Appendixes D1 and D2.

## II. FRBP 4001(b) INTRODUCTORY STATEMENT

| | |
|---|---|
| Name of Entity with Interest in Cash Collateral | Small Business Administration ("SBA") |
| Purpose of Use of Cash Collateral | Cash on hand is to be used to pay operating expenses consistent with the Budget attached as Exhibit 1 ("Budget") to the Georgieva Declaration. |
| Material Terms of Use of Cash Collateral | BRG requests authorization to use cash collateral to pay the expenses identified in the Budget with an authorized variance of up to 15% on any line item for each calendar month. <br><br> To prevent irreparable harm, BRG asks for entry of an interim order authorizing use of the cash collateral for a period of not less than 60 days pending further order of the Court. |
| Liens, Cash Payments, or Other Adequate Protection: | No adequate protection has been negotiated. In the meantime, BRG proposes providing a replacement lien on post-petition property. |

---

[1] All statutory references herein are to Title 11 of the United States Code unless otherwise stated.

2

### III. NOTICE

Concurrent with the filing of this Motion, BRG will provide a copy of this Motion and its accompanying Notice of Motion to (a) the Office of the United States Trustee for the Southern District of California; (b) the 20 largest unsecured creditors; (c) Small Business Association; (d) any party that has requested notice pursuant to FRBP 2002; and (e) any other parties in interest. BD respectfully submits that no further notice is required by FRBP 2002 or Local Bankruptcy Rules 2002-1, 2002-4, 9014-3, and 9014-5.

### IV. RELIEF REQUESTED

BRG anticipates that it will receive cash during this Chapter 11 case from income received from its accounts receivables and other collateral. The SBA asserts a perfected security interest in all of BD's personal property and all proceeds therefrom ("Cash Collateral"). BRG is a recipient for transfers from BD. By this Motion, BRG seeks authority to use Cash Collateral, if nay, to fund BRG's continued operations pursuant to the Budget attached to the Georgieva Declaration as **Exhibit 1.** BRG intends to use the Cash Collateral to fund its reasonable, ordinary, and necessary operating expenses. Immediate relief is necessary to prevent irreparable harm and maintain BRG's operations as a going concern.

BRG seeks to provide the SBA adequate protection in the form of a replacement lien provided to the extent BD's use of the Cash Collateral results in a decrease in the value of the SBA's interest in BRG's assets. The replacement lien shall have the same validity, extent, and priority as the SBA's lien against the Cash Collateral on the Petition Date. Attached hereto as Exhibit A is a proposed interim order submitted in accordance with FRBP 4001(b)(1)(A) ("Proposed Interim Order"). The Proposed Interim Order does not contain any provisions prohibited by Appendix D2 of Local Rules and should be entered pending further order of the Court.

### V. BACKGROUND

BD is a California limited liability company that was formed in 2017. BD operates two restaurants serving Chicano comfort food, located at (1) 2234 Logan Avenue, San Diego, CA

92113 ("San Diego Property"), and (2) Petco Park (which is serviced from BD's catering kitchen at 665 H Street, Suites A and G, Chula Vista, CA 91910 ("Chula Vista Property")).

BRG is a Texas limited liability company that was formed in February 2022. BRG operates a similar restaurant located at 620 S. Presa, San Antonio, TX 78210 ("San Antonio Property"), and which held its grand opening on March 15, 2024.

BD and BRG share common ownership. Both companies have four managing members, Pablo Rios and Margarita Georgieva (married), and Ernesto Gastelum and Laiza Saldana (married). Each member owns a 25% membership interest.

Since around September 2022, BD transferred approximately $524,558.54 of value to BRG through, primarily, BD's payment of BRG's start-up expenses, including tenant improvements and construction expenses, equipment purchases and leases, food and supplies, utilities, and payroll.

Neither BD nor BRG have significant unencumbered assets to liquidate for the benefit of unsecured creditors.

They do not own any real property. BD leases the San Diego and Chula Vista Properties. BRG leases the San Antonio Property. Both companies are current on their lease payments.

BD and BRG have limited cash or financial assets. Their principal assets are their commercial kitchen equipment.

BD's commercial kitchen equipment is over-encumbered with (1) first priority purchase money security interests held by various financing companies ("Equipment Lenders")[2], and (2) second priority blanket lien held by the Small Business Administration ("SBA"). The SBA Loan is secured by UCC-1 financing statements filed on October 7, 2020.[3] The SBA's lien is in first position against BD's cash, negotiable instruments, documents of title, securities, deposit

---

[2] The "Equipment Lenders" include TimePayment Corp., First Electronic Bank, Channel Partners Capital, Capital Peaks, and Lead Bank.

[3] On or about September 25, 2020, the BD borrowed $150,00 from the SBA. On or about March 14, 2022, BD's loan was modified by increasing the principal loan amount to $500,000.

accounts, or other cash equivalents ("Cash Collateral"). On the Petition Date, BD held cash of approximately $6,500[4] and food inventory of approximately $800.

BRG's commercial kitchen equipment is under-encumbered with first priority purchase money security interests held the Equipment Lenders. BRG is not a borrower or guarantor of BD's debt to the SBA. On the Petition Date, BRG held cash of approximately $10,000[5] and food inventory of approximately $800.

The Debtors do not believe that the liquidation of their bankruptcy estates will result in meaningful payment to unsecured creditors, if any. On the other hand, in these Cases, BD and BRG will contribute their projected disposable income towards their financial reorganization that will pay all priority tax claims in full and make meaningful payment to other unsecured creditors.

By this Motion, BRG seeks interim court approval to use cash collateral from the Petition Date to June 30, 2024 pursuant to the proposed budget ("Budget") attached to the Georgieva Declaration as **Exhibit 1**.

VI.   **THE COURT SHOULD ENTER THE PROPOSED INTERIM ORDER**

A.   **BD's Use of Cash Collateral Is In the Best Interests of the SBA and the Estate**

Section 363(a) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . .subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

As is set forth more fully in BRG's Budget, BRG's necessary business operations require use of the SBA's Cash Collateral. If BRG is unable to use its cash collateral it would result in a

---

[4] On April 1, 2024, Yes Capital levied the accounts of BD and BRG at PNC Bank. An administrative freeze was placed on BD's and BRG's accounts in an amount double (approximately $92,284) of the underlying judgment (approximately $46,142). As a result, the balances in BD's and BRG's accounts are currently negative, leaving both companies without access to any funds in their accounts. BD and BRG expect to have these funds returned to them in the coming days.

[5] See note 4 supra.

catastrophic cessation of BRG's operations, causing irreparable harm to the estate. BRG believes the ongoing concern value of its assets as an operating business far exceeds the liquidation value of BRG s assets if broken up and sold in liquidation. BRG's use of the Cash Collateral is therefore for the benefit of the SBA and the estate and BRG requests authorization to use the Cash Collateral to pay BRG's necessary expenses to operate its business in accordance with the Budget (with an authorized variance of up to 15% on any line item for each calendar month).

### B. The SBA Is Adequately Protected by BRG's Proposed Use of Cash Collateral

Section 363(e) requires the Court "on request" to "prohibit or condition" the use of cash collateral upon providing a secured creditor adequate protection. Section 361 provides that such adequate protection can take the form of either (1) periodic cash payments to the extent the use of the cash collateral results in "a decrease in the value of [the] entity's interest in" the cash collateral or (2) authorization of a replacement lien to the extent that the debtor's use of the cash collateral results in a decrease in value of the creditor's cash collateral. The amount of adequate protection necessary is determined on a case-by-case basis. *See First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) (where there was no decline or depreciation in the value of the secured creditor's collateral, the creditor was adequately protected by a replacement in post-petition rents and was not entitled to any adequate protection payments).

The SBA has a secured claim against the BD's Cash Collateral and was owed $701,730.09 on the Petition Date as asserted by the Department of Treasury in a letter dated February 22, 2024 (and which was not been verified by BD). The SBA may also have a secured also against BRG's Cash Collateral. On the Petition Date, BRG had cash on hand of approximately $10,000 and food inventory valued at $800.

Therefore, to provide the SBA adequate protection pursuant to §§ 361 and 363(e), BD proposes use of the Cash Collateral with the following limitations:

 a. Any expenditures in excess of the monthly amounts set forth in the Budget and the allowable variances will require the written approval of the SBA or further order of the Court.

 b. If less than the entire amount of any expense category is expended in a particular period, the unused portion may be carried over to future periods.

    c.    Except as is otherwise provided for in the Budget, BD will not use cash collateral to make payments (i) to the holders of claims junior in priority to the SBA; or (ii) on expenses that do not directly relate to the preservation, maintenance, or operation of BD's business.

    d.    The SBA will be granted a replacement lien in property of BD's estate and proceeds thereof, tangible and intangible, to the same extent and priority as the liens held by the SBA on the petition date.

BRG's proposed use of the SBA's cash collateral is consistent with the requirements of § 363 and the SBA is fully protected by the adequate protection proposed. BRG's continued use of the Cash Collateral should therefore be granted to ensure BRG's continued operation and maximize the value of the estate.

## VII. CONCLUSION

For the reasons set forth above, BRG respectfully requests the Court enter the Proposed Interim Order.

Respectfully submitted by,

BANKRUPTCY LAW CENTER, APC

Dated: April 3, 2024

By: /s/Donald W. Reid
Ahren Tiller, Esq.
Donald W. Reid, Esq.
Proposed Counsel for Barrio Dogg, LLC
and Barrio Restaurant Group, LLC
Debtor and Debtor in Possession